# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

ANDRE HARRIS #368-227  
Plaintiff     *

v     *     Civil Action No. ELH-12-3601

LT. RODNEY O. LIKIN[1]     *  
SGT. PHILIP D. MERLING  
CO II MARLIN E. RANDALL     *  
CO II BRET A. WILBURN  
CO II BRAD M. BRINEGAR     *  
CO II VINCENT J. LARK  
M. DAVIS     *  
Defendants

\*\*\*

## MEMORANDUM

Andre Harris, who is currently incarcerated at Roxbury Correctional Institution in Hagerstown, Maryland ("RCI"), *see* ECF No. 11, filed a civil rights complaint, pro se, against several correctional defendants: Lieutenant Rodney Likin; Sergeant Philip Merling; CO II Marlin Randall, CO II Bret Wilburn; CO II Brad Brinegar; and CO II Vincent Lark.[2] Harris seeks $25,000.00 in compensatory damages and $50,000.00 in punitive damages from each defendant.

Defendants have moved to dismiss or, in the alternative, for summary judgment ("Motion") (ECF No. 12), and their Motion is supported by several exhibits. Plaintiff opposes the Motion. ECF No. 16. Upon review of the papers and exhibits filed, the court finds a hearing is unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

---

[1] The Clerk shall amend the docket to reflect the full and proper spelling of defendants' names.

[2] Without explanation, the Institutional Coordinator at Western Correctional Institution declined to accept service of process on behalf of defendant Davis, who is alleged to have participated in the wrongful destruction of plaintiff's personal property. *See* ECF No. 5. As of this date, he has not been served.

**Factual Background**

Plaintiff alleges that on August 9, 2012, while he was confined at Westen Correctional Institution ("WCI"), he was removed from a recreation area and placed without justification in a strip cell containing only a toilet. Plaintiff claims he was kept in the strip cell from August 9 until August 14, 2012, and was allowed only to wear socks and underwear. Further, he alleges that Merling permitted Wilburn, Brinegar, Lark, and Davis to assault him and that on August 16, 2012, Randall brought him to "Sgt. Martin,"[3] who assaulted him before forcing him to sign off on an Administrative Remedy Procedure complaint ("ARP"). Plaintiff also claims that on August 9, 2012, Brinegar, Randall, and Davis threw out all of his property and one of them spit chewing tobacco into his drinking cup. According to plaintiff, Likin was aware of all misconduct and took no steps to halt it.

Defendants' version of events differs. According to defendants, plaintiff was housed with prisoner Bradford Holup, who on August 9, 2012, attempted to escape by scaling a recreation area fence. ECF No. 12, Exhibit 1, Declaration of Lt. Likin, WCI Special Confinement Housing Unit 4 Manager, ¶5. Merling ordered correctional staff to escort plaintiff from the recreation area to a staff alert cell[4] so that he could be housed there "temporarily." The cell that plaintiff had shared with Holup was declared a crime scene and was secured and locked so that the Internal Investigative Unit ("IIU") could process it for information and evidence. *Id.,* Exhibit 2, ¶2.

---

[3] Sgt. Martin is not named in the complaint.

[4] Plaintiff refers to the "staff alert cell" as the "strip cell." The undersigned has adopted plaintiff's reference for the purpose of this Memorandum.

Merling avers that he had no personal knowledge that plaintiff was assaulted by correctional staff or that any physical force was used to transfer plaintiff to the staff alert cell. *Id.* Further, he alleges that, if physical force had been used, the officers involved would be required to write a report, and no report was filed in connection with the assaults alleged by plaintiff. *Id.* According to Merling, a prisoner placed in a staff alert cell wears only a tee shirt, boxer shorts, and socks. *Id.,* ¶3. Merling claims that he had an uneventful meeting with plaintiff, at which he asked plaintiff to "sign off" (waive) filing an ARP. Plaintiff agreed to do so, the conversation was pleasant, and Merling avers he did not assault plaintiff during the encounter. *Id.,* ¶4.

Brinegar, Lark, and Wilburn deny that they assaulted plaintiff. *Id.,* Exhibit 3, Declaration of Officer Brinegar, ¶2; Exhibit 4, Declaration of Officer Lark, ¶2; Exhibit 5, Declaration of Officer Wilburn, ¶2. Randall also avers that his encounters with plaintiff have been uneventful. *Id.,* Exhibit 6, Declaration of Officer Randall, ¶2. Likin, the Special Confinement Unit Manager, avers that he was not on duty on August 9, 2012, and did not personally investigate anything related to Holup's attempted escape. *Id.,* Exhibit 1, Declaration of Lt. Likin.

Plaintiff was examined by a nurse on August 14, 2012, for a physical assessment prior to his return to a regular segregation cell. The nurse noted that there was no bruising or bleeding and "no injuries, open areas or medical concerns. *Id.,* Exhibit 7, medical certification and medical record.

In his opposition, plaintiff states that he was in the recreation cage, had no knowledge that Holup was attempting to escape, and that Holup's attempt was not noticed for nearly an hour because corrections personnel were not monitoring cameras or otherwise supervising prisoners in the recreation area. ECF 16, p. 1. He claims Brinegar, Wilburn, Lark, and Davis led him to Cell

3

B 2, told workers to leave the tier, then "all assaulted me exicution (sic) style hand cuffed" and told him if he said anything he would be killed. *Id.,* p. 2. Water was turned off in the cell and plaintiff slept on the filthy floor. He states he "was hurt physically…from Brinegar, Lark, Davis, [and] Wilburn punching and kneeing" him, ECF 1, p. 4, and observes that he was "treated as an animal," and his requests to obtain medical treatment following the assaults were ignored. ECF 16, pp. 1-4. However, he was seen by medical personnel on August 14 and 16, 2012, after his removal from the strip cell. *Id.* at 2-4. Plaintiff further claims he was hit in the face and told to sign off on his ARP complaint. *Id.* at 3. Plaintiff notes that although threatened, he was never given an adjustment ticket for aiding his cellmate in the attempted escape. *Id*. at 2-4. He alleges that if his shared cell was needed for investigation he could have been placed in another cell, rather than kept in isolation. *Id.* He believes this mistreatment, which culminated in the destruction of his property by Randall, Brinegar, and Davis and was witnessed by a fellow prisoners, was undertaken to punish him for his cellmate's actions. *Id*. He remains "depressed and uneasy from going through the whole situation." *Id.* at 4.

### Standard of Review

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. ECF 12. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U. S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a

4

reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

5

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

Plaintiff opposes the Motion but has not filed an affidavit under Rule 56(d). Moreover, I am satisfied that it is appropriate to address the defendants' Motion as one for summary judgment. To do so will facilitate disposition of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. To defeat

7

summary judgment, there must be a *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). Moreover, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

**Discussion**

Plaintiff alleges that his personal property was destroyed without justification; he was subjected to impermissible conditions of confinement as a form of punishment for acts he did not commit; his requests for medical treatment were ignored; and he repeatedly was subjected to excessive use of force. Underlying all these allegations is plaintiff's suggestion that defendants' misconduct was undertaken in retaliation for plaintiff's failure to alert prison authorities to Holup's escape and to punish him for his cellmate's attempted escape.[5]

---

[5] In order to prevail on a claim of retaliation, plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that

8

Destruction of Pesonal Property

Plaintiff does not state the basis for his federal cause of action with regard to his claim for destruction of property. As noted, because plaintiff is self-represented, he is afforded a liberal construction of his submission. It appears that he is raising a claim that certain officers acted with malice to destroy or damage his property intentionally during the search of the cell plaintiff shared with Holup.

The destruction of the property, without an adequate finding that it was contraband, would amount to a denial of due process. In the case of personal property, however, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy. *See Parratt v. Taylor*, 451 U. S. 527, 542-44 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U. S. 327 (1986). The right to seek damages and injunctive relief in Maryland

---

the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Retaliation, thought it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim. *See ACLU of Maryland, Inc. v. Wicomico County, Md*., 999 F.2d 780, 785 (4th Cir. 1993).

Plaintiff alleges he was forced to abandon his administrative claim, was subjected to physical assaults, and was otherwise mistreated because he was forced to sleep nearly naked on a dirty bare floor. In the prison context, such claims are treated "with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams*, 40 F.3d at 74). Here, however, defendants fail to allege, much less show, that keeping plaintiff in the strip cell for five days or requesting he "sign off" on his administrative claim were in response to any misconduct on his part. The retaliation inference will not be addressed here; counsel appointed for plaintiff may determine the viability of such claim at a later date.

courts constitutes an adequate post-deprivation remedy. *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).[6] For that reason, plaintiff's property claim cannot proceed here.

## Conditions of Confinement

In determining whether the challenged conditions amount to punishment, it is not the province of this court to determine how a particular prison might be more beneficently operated; the expertise of prison officials must be given due deference. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995). Poor conditions of confinement do not necessarily violate the Eighth Amendment to the Constitution; only conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

In order to establish the imposition of cruel and unusual punishment, plaintiff must prove two elements - that he suffered deprivation of a basic human need that was "*objectively* sufficiently serious,"[7] and that "*subjectively* [defendants] acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted). Plaintiff alleged that he was kept in a strip cell for a five-day period, and continues to suffer emotionally. Although defendants claim that plaintiff's placement in the strip cell was a 'temporary" measure that allowed them to process Holup's (and plaintiff's) cell as a crime scene, it is apparent that plaintiff was never charged – even at the institutional level – with having any role in Holup's attempted escape. And, of import here, defendants do not contest the duration of

---

[6] Although *Juncker* dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property. In dismissing plaintiff's due process claim in *Juncker*, the court relied on *Parratt v. Taylor*, 451 U.S. 527 (1981), involving personal property.

[7] In short, plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions. *See Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

confinement in the cell in issue, and do not indicate that plaintiff was kept in the cell because no other space was available. Nor do they explain why plaintiff was deprived of sufficient clothing and – if nothing more – a bed.

Ultimately, after discovery, plaintiff's retention in the strip cell may not amount to an objectively serious deprivation of human need; the conditions of the cell may not be found sufficiently onerous as to cause significant physical or emotional injury. Determination of this claim, however, is premature. Therefore, summary judgment shall be denied.

## Denial of Medical Care

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment, *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment. *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

In order to state an Eighth Amendment claim for denial of medical care, plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however,

does not end the inquiry. The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) (*quoting Farmer,* 511 U.S. at 844).

If the requisite subjective knowledge is established, a prison official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Under the Eighth Amendment, "[a] prison official's duty . . . is to ensure "'reasonable safety' . . ." (citation omitted). Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris,* 240 F. 3d 383, 390 (4th Cir. 2001) (*citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

Plaintiff alleges he was punched, slapped, and kneed and that his requests to be seen by a nurse after each of these incidents were ignored. He does not indicate what injuries he actually incurred, nor does he detail ongoing medical problems as a result of any such injury. Plaintiff was examined on August 14, 2012, but the medical record contains no reference of injury due to assault and no demonstration of cuts or bruising. Analgesic medications were neither requested nor prescribed. Indeed, plaintiff's vital signs were within normal limits. ECF No. 12, Ex. 7.

Plaintiff has failed to delineate, much less demonstrate, that he sustained serious injury or that he was deliberately left unattended. Defendants are entitled to summary judgment on this claim.

## Use of Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force, however. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010). Rather, the extent of injury incurred is one factor indicative of the amount of force and whether the force was necessary in a particular situation. *Id*. at 37. But, if force is applied "'maliciously and sadistically,'" liability is not avoided simply because the prisoner had "the good fortune to escape without serious injury." *Wilkins,* 559 U.S. at 38 (citation omitted).

In his complaint and verified opposition,[8] plaintiff alleges that he was repeatedly assaulted by defendants Wilburn, Brinegar, Lark, and Davis over a period of several days, without justification, and that defendants Likin and Merling either knew of or actively condoned this misconduct. Defendants aver the incidents never took place. "Credibility determinations…are jury functions, not those of a judge…." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250

---

[8] Plaintiff verifies his claims in ECF No. 16, p. 5.

(1986). Whether plaintiff was assaulted as alleged is a factual dispute that cannot be resolved in the posture of this case. Accordingly, summary judgment is denied as to this claim.

Affirmative Defenses

Defendant Likin seeks dismissal from this action on the basis that plaintiff's claim against him is based solely on Likin's role as a supervisor. The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983).

Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).

Plaintiff has alleged such conduct here. While Likin may have been away from duty on August 9, 2012, the record has not yet been developed, and nothing suggests he was not on duty during the remaining four days of plaintiff's confinement in the strip cell and thus able to curb

any misconduct that may have occurred on that tier. Likin is not entitled to dismissal or to summary judgment at this juncture.

Defendants collectively contend they are entitled to summary judgment on the basis of qualified immunity as to all claims. Officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U. S. 800, 818 (1982); *accord Bland v. Roberts*, 730 F.3d 368, 391 (2013).

Thus, "officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful" are entitled to immunity from suit. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc), *cert. denied*, ____ U.S. ____, 132 S.Ct. 781, 181 L.Ed.2d 488 (2011); *accord Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012). The qualified immunity doctrine helps balance two important interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

The qualified immunity analysis can be separated into two inquiries: (1) whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury … show the officer's conduct violated a [federal] right," *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); and (2) whether the right at issue "was clearly established in the specific context of the case-that is, [whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted." *Merchant v. Bauer*, 677 F.3d 656, 662 (4th Cir. 2012) (citation omitted); *see Saucier*, *supra*, 533 U.S. at 201 (stating that, in

15

conducting the "clearly established" injury, a court must "ask whether the right was clearly established … in light of the specific context of the case, not as to a broad general proposition").

The second inquiry "turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Messerschmidt v. Millender*, ____ U.S. ____, 132 S.Ct. 1235, 1245, 182 L.Ed.2d 47 (2012) (citing *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). "To be clearly established, a right must be sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.' In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, ____ U.S. ____ , 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (quoting *Ashcroft v. alKidd*, 563 ___ U.S. ___, 131 S.Ct. 2074, 2078, 2083, 179 L.Ed.2d 1149 (2011)) (some internal quotation makrs and citations omitted). "If a law at th[e] time [of the alleged violation] was not clearly established," the official will be entitled to qualified immunity, because "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as lawful." *Harlow*, 457 U.S. at 818. On the other hand, "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Id*. at 818-19.

The Supreme Court has made clear that courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, *supra*, 555 U.S. at 236. The *Pearson* Court explained: "There are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." *Id*. at 237. Put

16

another way, "there will be cases in which a court will rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question whether the relevant facts make out a constitutional question at all." *Id*. at 239.

In determining whether a right was clearly established, courts in this circuit "'ordinarily need not look beyond the decisions of the Supreme Court, [the Fourth Circuit] [C]ourt of [A]ppeals, and the highest court of the state in which the case arose,' "as of the date of the conduct in issue. *Doe ex rel. Johnson v. S.C. Dept. of Soc. Servs.*, 597 F.3d 163, 176 (4th Cir. (citation omitted), *cert*. denied, ____ U.S. ____, 131 S.Ct. 392, 178 L.Ed.2d 137 (2010). The constitutional basis for the rights allegedly violated here are long established. And, by August 2012, defendants, who are seasoned correctional officers, should have been aware of those rights.

In sum, in determining whether a defendant is entitled to qualified immunity, the court must (1) identify the right allegedly violated, (2) determine whether the constitutional right violated was clearly established at the time of the incident, and (3) evaluate whether a reasonable official would have understood that the conduct at issue violated the clearly established right. *See Henderson v. Simms*, 223 F.3d 267, 271 (4th Cir. 2000) (quoting *S. P. v. City of Tacoma Park*, 134 F.3d 260, 265 (4th Cir. 1998)); *see also Vathekan v. Prince George's County*, 154 F.3d 173, 179 (4th Cir. 1998). Qualified immunity provides no basis to dismiss plaintiff's allegations.

In light of the foregoing, summary judgment shall be granted to defendants with regard to plaintiff's claims concerning loss of property and denial of medical care. But, summary judgment is denied with regard to plaintiff's remaining Eighth Amendment claims concerning conditions of confinement and excessive use of force. In addition, counsel shall be appointed for plaintiff.

A separate Order follows.

<u>February 10, 2014</u>　　　　　　　　　　　　<u>/s/　　　　　　　　　　　</u>
Date　　　　　　　　　　　　　　　　　　　Ellen Lipton Hollander
　　　　　　　　　　　　　　　　　　　　　United States District Judge