IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANDRE HARRIS, #338-227      *

    Plaintiff      *
v.      *    Civil No.: ELH-12-3601

LT. RODNEY O. LIKIN      *

And      *

SGT. PHILIP D. MERLING      *

And      *

CO II, MARLIN E. RANDALL      *

And      *

CO II, BRET A. WILBURN      *

And      *

CO II, VINCENT J. LARK      *

And      *

CO II, BRAD M. BRINEGAR      *

And

     *
FRANK BISHOP, Jr.

    Defendants

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## SECOND AMENDED COMPLAINT

Plaintiff Andre Harris amends his Complaint and states as follows:



(98277-1)

I.  **NATURE OF THE ACTION**

1. This is a prisoner civil rights action filed pursuant to 42 U.S.C.A. § 1983, 42 U.S.C.A. § 1981, and 42 U.S.C.A. § 1985.

2. As set forth more fully below, Plaintiff seeks judgment and damages arising from violations of his civil rights which occurred while he was in the custody of the Maryland State corrections system, which claims, upon information and belief, exceed $75,000.00.

II.  **PARTIES**

3. Andre Harris, Inmate #368-227 currently resides at Patuxent Institution corrections facility.

4. Rodney O. Likin is employed at Western Correctional Institution located in Allegheny County, Maryland.

5. Philip D. Merling is employed at Western Correctional Institution located in Allegheny County, Maryland.

6. Marlin E. Randall is employed at Western Correctional Institution located in Allegheny County, Maryland.

7. Bret A. Wilburn is employed at Western Correctional Institution located in Allegheny County, Maryland.

8. Vincent J. Lark is employed at Western Correctional Institution located in Allegheny County, Maryland.

9. Brad M. Brinegar is employed at Western Correctional Institution located in Allegheny County, Maryland.

2

10. Frank Bishop, Jr. is employed at North Branch Correctional Institution located in Allegheny County, Maryland.

### III. JURISDICTION AND VENUE

11. This action is being brought for the purpose of determining a question of actual controversy between the parties as more fully set forth below.

12. This Court has subject matter jurisdiction over this action pursuant to 42 U.S.C.A. § 1983, 42 U.S.C.A. § 1981, and 42 U.S.C.A. § 1985.

13. Venue is proper in the District of Maryland pursuant to 28 U.S.C. § 1391 because it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

14. This Court has jurisdiction over the named Defendants because, upon information and belief, each was employed in the state of Maryland where and while the acts complained of took place.

15. An actual case in controversy of a justifiable nature exists between Plaintiff and the Defendants arising from Plaintiff's treatment by the Defendants while he was incarcerated in their place of employment, Western Correctional Institute.

### IV. FACTS

16. On August 9, 2012, Plaintiff was an inmate at Western Correctional Institute ("WCI") in Cumberland, Maryland.

17. On August 9, 2012, during the daily one-hour exercise period for his cell group, Plaintiff's cellmate apparently accomplished a temporary escape from WCI.

18. Plaintiff was not aware of his cellmate's apparent escape and returned to his cell without incident at the end of the exercise period.

19. Shortly after the end of the exercise period, Plaintiff was questioned by Defendants Merlin, Wilburn, Brinegar, Lark, and Davis ("officers") regarding the whereabouts of his cellmate.

20. Plaintiff denied any knowledge of his cellmate's escape, or any plans his cellmate had for escape and told this information to the officers.

21. The officers indicated that they did not believe Plaintiff and continued to make accusations against him.

22. Plaintiff responded that the officers should not be blaming him for the escape since it was their responsibility to monitor inmates in the exercise yard, including through the use of video camera.

23. When Plaintiff made further attempts to deny knowledge of his cellmate's escape or any plans for escape, Defendant Merlin ordered that he be beaten by the other officers.

24. At that time Plaintiff was hand-cuffed, placed on his knees, and was struck by Defendants Wilburn, Brinegar, Lark, and Davis, having not himself acted against the officers in any physical way.

25. Plaintiff heard the officers counsel each other not to hit him on the face so any injuries would not be seen.

4

26. During the time the officers were interrogating Plaintiff regarding his cellmate's escape, up to and including the time they physically attacked him, the officers directed derogatory racist remarks at Plaintiff.

27. Thereafter, the officers, at the behest of Defendant Wilburn, removed Plaintiff to an isolation cell.

28. Isolation cells are typically referred to by WCI inmates as "strip cells."

29. Later on August 9, 2012, after Plaintiff's removal to the isolation cell, Defendants Randall, Brinegar, and Davis presented to his cell searching and removing his personal belongings including pictures, mail, books, commissary items, and clothes. As well, one of them spit chewing tobacco into his drinking cup.

30. With the exception of the drinking cup, Plaintiff's personal items were not returned to him.

31. Plaintiff was placed into the isolation cell with nothing but his boxer shorts and socks.

32. The isolation cell contained no bed, no mattress, no pillow, no blankets, no bedding of any kind.

33. The isolation cell contained only a toilet and dirty cement floor.

34. When he was able to sleep, Plaintiff was forced to sleep on a cold, dirty, cement floor without benefit of sheet, blanket, pillow, mattress, bed, or any kind of bedding at all.

35. At times during his stay in the isolation cell, Plaintiff was cold, despite the summer weather, and tried to sit within the circumference of the small ray of light coming through the window for warmth.

36. Plaintiff requested material with which to cover himself for sleep or warmth and was denied.

37. For the first day or two in the isolation cell, no water was functional to the cell.

38. Plaintiff remained in the isolation cell for five (5) days, from August 9, 2012 to August 14, 2012.

39. Plaintiff was not interviewed further regarding his cellmate's escape after the above-referenced interview.

40. Plaintiff was not evaluated or examined by any medical or mental health professional during his stay in the isolation cell.

41. The investigation regarding Plaintiff's cellmate's escape was apparently concluded on August 9, 2012, including the capture of the cellmate that same day.

42. As a result of the assault referenced above, the Plaintiff sustained a cut to his shoulder and a raised bump on his chest.

43. Plaintiff reported his injuries to medical staff.

44. During his more than 100 hours in the isolation cell, Plaintiff suffered mental and emotional distress which persists to this day.

45. Shortly after his release from the isolation cell, Plaintiff filed an administrative complaint within WCI.

46. Shortly thereafter, Officers Randall and Martin met with him and threatened him if he refused to withdraw his administrative complaint and indicated if the complaint was withdrawn, no "adjustment ticket" would be filed against him.

6

47. An "adjustment ticket" is a notation for the inmate's file of a breach of WCI rules and/or regulations.

48. Plaintiff did not receive any "adjustment ticket" related to the events of August 9 through 14, 2012.

49. The Defendants, individually, and together, acted under color of state law to deprive Plaintiff of his constitutional rights and privileges by virtue of subjecting him to an unnecessary, unjustified, unwarranted, and intentionally punitive and retaliatory deprivation of his 8th Amendment right to be free from cruel and unusual punishment.

50. The Defendants perpetrated cruel and unusual punishment on Plaintiff by physically attacking him without provocation or the need to maintain the safety of the correctional facility.

51. The Defendants perpetrated cruel and unusual punishment on Plaintiff by placing him in an isolation cell without justification for five (5) days in violation of the Department of Corrections policy, including, but not limited to DCD 110-4 (attached) and in violation of his rights.

52. Maryland Department of Public Safety and Correction Services Division of Correction Policy on the use of isolation cells, DCD 11-4, (hereinafter "DCD 110-4") applied to the detention of Mr. Harris from August 9, 2012 to August 14, 201.

53. DCD 110-4 states among other applicable sections that "isolation confinement cells shall be used only for inmates who, by reason of their behavior, harm, or threaten harm to institutional staff, institutional property, and/or other inmates" *(DCD 110-4 Paragraph B.)*

7

54. DCD 110-4 states among other applicable sections that "an inmate shall be placed in isolation only by authorization of the warden (or whoever is designated as acting warden) in consultation with a health care provider or mental health professional" *(DCD 110-4 Paragraph C.)*

55. DCD 110-4 states among other applicable sections that "[p]rior to placement in isolated confinement, the inmate shall be evaluated by a health care provider/mental health professional in order to determine if the inmate is suffering from a mental or medical disorder" *(DCD 110-4 Paragraph D.)*

56. DCD 110-4 states among other applicable sections that "an inmate shall be housed in the isolation confinement area only so long as needed for the security and control of the institution and, in no instance, shall the inmate be kept in isolation longer than eight (8) consecutive hours, without a follow-up mental health assessment" *(DCD 110-4 Paragraph E.)*

57. DCD 110-4 states among other applicable sections that "under no circumstances shall consecutive periods of isolation confinement exceed 48 hours. If at the conclusion of the isolation confinement period the inmate has not resumed behavior that permits release from isolation, the warden shall, through the mental health provider take action to transfer the inmate to an appropriate facility". *(DCD 110-4 Paragraph F.)*

58. The Defendants perpetrated cruel and unusual punishment on Plaintiff placing Plaintiff in an isolation cell without basic necessities such as a bed, mattress, blanket, sheet, pillow, or any covering other than socks and boxer shorts for five (5) continuous days without interruption.

8

(98277-1)

59. Plaintiff was maintained in this isolation cell despite the fact that he had done nothing to harm himself or others and was not a danger to himself or others.

60. Plaintiff did not receive the required psychiatric evaluation to justify his placement in the isolation cell.

61. Plaintiff did not receive the required routine checks while restricted to the isolation cell.

62. Plaintiff was never charged by Defendants with any infractions of WCI rules or regulations to justify his placement in the isolation cell.

63. As a result, it is clear that Defendants acted in retaliation against Plaintiff for their unfounded presumption that Plaintiff was involved in the escape attempt by his cellmate.

64. Pursuant to rules and regulations applicable to inmates housed in WCI, the Warden was required to be notified that an inmate was placed into an isolation cell.

65. Defendants acted in retaliation against Plaintiff for their unfounded presumption that Plaintiff was involved in the escape attempt by his cellmate.

66. In August 2012, Defendant Frank Bishop, Jr., Warden at the time of the events, knew, or should have known that his employees and/or staff were violating Plaintiff's rights to be free of cruel and unusual punishment and that Plaintiff was injured as a result.

67. The corrections officer defendants acted intentionally and with actual malice toward Plaintiff as evidenced by their unprovoked physical attack on him, expression of racially biased profanity during the attack, and by placing him in an isolation cell without justification.

9

## V. COUNTS

### COUNT I

**(Violation of Prisoner Rights Pursuant to 42 U.S.C.A. § 1981)**

68. Plaintiff incorporates paragraphs 1 through 67 into Count I as if set forth in full.

69. The Defendants, individually, and together, acted under color of state law to deprive Plaintiff of his constitutional rights and privileges by virtue of subjecting him to an unnecessary, unjustified, unwarranted, and intentionally punitive and retaliatory deprivation of his 8th Amendment right to be free from cruel and unusual punishment.

70. The Defendants perpetrated cruel and unusual punishment on Plaintiff by physically attacking him without provocation or the need to maintain the safety of the correctional facility.

71. The Defendants perpetrated cruel and unusual punishment on Plaintiff by placing him in an isolation cell without justification for five (5) days in violation of the Department of Corrections policy, including, but not limited to DCD 110-4 (attached) and in violation of his rights.

72. Maryland Department of Public Safety and Correction Services Division of Correction Policy on the use of isolation cells, DCD 11-4, (hereinafter "DCD 110-4") applied to the detention of Mr. Harris from August 9, 2012 to August 14, 201.

73. DCD 110-4 states among other applicable sections that "isolation confinement cells shall be used only for inmates who, by reason of their behavior, harm, or threaten harm to institutional staff, institutional property, and/or other inmates" *(DCD 110-4 Paragraph B.)*

10

74. DCD 110-4 states among other applicable sections that "an inmate shall be placed in isolation only by authorization of the warden (or whoever is designated as acting warden) in consultation with a health care provider or mental health professional" *(DCD 110-4 Paragraph C.)*

75. DCD 110-4 states among other applicable sections that "[p]rior to placement in isolated confinement, the inmate shall be evaluated by a health care provider/mental health professional in order to determine if the inmate is suffering from a mental or medical disorder" *(DCD 110-4 Paragraph D.)*

76. DCD 110-4 states among other applicable sections that "an inmate shall be housed in the isolation confinement area only so long as needed for the security and control of the institution and, in no instance, shall the inmate be kept in isolation longer than eight (8) consecutive hours, without a follow-up mental health assessment"; *(DCD 110-4 Paragraph E.)*

77. DCD 110-4 states among other applicable sections that "under no circumstances shall consecutive periods of isolation confinement exceed 48 hours. If at the conclusion of the isolation confinement period the inmate has not resumed behavior that permits release from isolation, the warden shall, through the mental health provider take action to transfer the inmate to an appropriate facility" *(DCD 110-4 Paragraph F.)*

78. The Defendants perpetrated cruel and unusual punishment on Plaintiff placing Plaintiff in an isolation cell without basic necessities such as a bed, mattress, blanket, sheet, pillow, or any covering other than socks and boxer shorts for five (5) continuous days without interruption.

11

79. Plaintiff was maintained in this isolation cell despite the fact that he had done nothing to harm himself or others and was not a danger to himself or others.

80. Plaintiff did not receive the required psychiatric evaluation to justify his placement in the isolation cell.

81. Plaintiff did not receive the required routine checks while restricted to the isolation cell.

82. Plaintiff was never charged by Defendants with any infractions of WCI rules or regulations to justify his placement in the isolation cell. Defendants acted in retaliation against Plaintiff for their unfounded presumption that Plaintiff was involved in the escape attempt by his cellmate.

83. Pursuant to rules and regulations applicable to inmates housed in WCI, the Warden was required to be notified that an inmate was placed into an isolation cell. As a result, Defendant Frank Bishop, Jr., Warden at the time of the events, knew, or should have known that his employees and/or staff were violating Plaintiff's rights to be free of cruel and unusual punishment. Thus, Plaintiff is entitled to both compensatory and punitive damages.

84. The corrections officer defendants acted intentionally and with actual malice toward Plaintiff as evidenced by their unprovoked physical attack on him, expression of racially biased profanity during the attack, and by placing him in an isolation cell without justification. Thus, Plaintiff is entitled to both compensatory and punitive damages.

WHEREFORE, Plaintiff requests judgment against Defendants in an amount to exceed $75,000, as well as punitive damages, costs, attorneys' fees, and interest.

12

## COUNT II

### (Violation of Right to Equal Protection Pursuant to 42 U.S.C.A. § 1981)

85. Plaintiff incorporates paragraphs 1 through 84 into Count II as if set forth in full.

86. The Defendants, individually, and together, acted under color of state law to deprive Plaintiff of his constitutional rights and privileges to equal protection by virtue of subjecting him to an unnecessary, unjustified, unwarranted, and intentionally punitive and retaliatory deprivation of his rights arising from their unwarranted racial bias against him.

87. The Defendants acted out of unconstitutional racial bias in physically attacking him without provocation other than their apparent desire to retaliate against him for their misperception he was in some way involved in the escape by his cellmate. That the physical attack was accompanied by the expression of derogatory racist remarks demonstrates the Defendants acted out of malice and in violation of Plaintiff's right to equal protection pursuant to 42 U.S.C.A. § 1981.

88. That their physical attack accompanied by the expression of derogatory racist remarks was followed immediately by Plaintiff being placed in an isolation cell without basic necessities such as a bed, mattress, blanket, sheet, pillow, or and covering other than socks and boxer shorts for five (5) continuous days without interruption demonstrates the Defendants were acting with actual malice, in retaliation against Plaintiff, and in violation of his rights of equal protection.

13

89. The corrections officer Defendants acted intentionally and with actual malice toward Plaintiff as evidenced by their unprovoked physical attack on him, expression of racially biased profanity during the attack, and by placing him in an isolation cell without justification.

WHEREFORE, Plaintiff requests judgment against Defendants in an amount to exceed $75,000, as well as punitive damages, costs, attorneys' fees, and interest.

## COUNT III

**(Conspiracy to Deprive Another of the Right to Equal Protection Under Law Pursuant to 42 U.S.C.A. § 1985)**

90. Plaintiff incorporates paragraphs 1 through 89 into Count III as if set forth in full.

91. The Defendants acted together and conspired, under color of state law, to deprive Plaintiff of his constitutional rights and privileges by virtue of subjecting him to an unnecessary, unjustified, unwarranted, and intentionally punitive and retaliatory deprivation of his rights arising from their unwarranted racial bias against him and the cruel and unusual punishment of restricting him to a "strip cell" without justification.

92. The Defendants acted in concert, intentionally, and with actual malice toward Plaintiff to deprive him of his constitutional right to equal protection under the law.

WHEREFORE, Plaintiff requests judgment against Defendants in an amount to exceed $75,000, as well as punitive damages, costs, attorneys' fees, and interest.

Plaintiff further requests this Court to assess such additional damages and relief as the Court deems just.

Respectfully submitted,

/s/
Kristin L. Kremer (Rieger)
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, Maryland 21202
Telephone: (410) 783-4000
Facsimile: (410) 783-4040
Bar Number : 23799
KRieger@gdldlaw.com
*Attorneys for Plaintiff*

## REQUEST FOR JURY TRIAL

Plaintiff respectfully requests a trial by jury.

/s/
Kristin L. Kremer (Rieger

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of October, 2014, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will serve all counsel of record.

/s/
Kristin L. Kremer (Rieger)

15

4813-2116-7136, v. 1
(98277-1)